A yellow light on, you have two minutes. When the red light comes on, we ask you to conclude unless you're answering a question from the bench. We have read your record, the briefs, and the record excerpts. We've not necessarily been into the full record, so particularly in the second case of the morning, we appreciate record citations, but also to the extent they're relevant in the first one. We'll call the first case, number 14-40344, United States v. Gonzalez. Good morning, Your Honors. May it please the Court. Your Honors, this is an appeal from a case in which my client was accused and convicted in the Southern District of exporting empty firearm magazines to Mexico. The issue as posed in the brief is basically whether the trial court erred when it denied my client's motion to dismiss the counts dealing only with the empty firearm magazines. But the question really that this Court has called upon to answer today is really whether the government's determination issued after the fact, after the export, should be retroactively dispositive as to the coverage of the munitions list. Did you raise that in the district court, the timing issue of the government determination? I saw that in the First Circuit case you cited as supplemental authority, but I'm not sure that was raised below. Well, Your Honor, that was an argument that stems or flows logically out of the complaint that we made at the district court level, which is that it's not in the munitions list. I know you said that down in Laredo, but you didn't say specifically there was a timing issue, did you? Not in my brief, Your Honor, only that it's not in the munitions list. And the government's brief, and if I may go on, at the time of trial, actually, after the motion to dismiss had been denied and our objection to the government's expert had been lodged, the government sat on the stand and testified, basically, that working for the State Department, they had decided or they knew that these empty firearm magazines were, in fact, components of the weapons. Now, at the time of the exports and at the time of this trial, I did cite to the court United States v. Flores, which is really the case that I exclusively relied on at the time of trial and really the only case that has ever addressed the issue of empty firearm magazines. And coincidentally, it was from this court, Your Honors. Now, the case that I submitted via Appellate Rules 28J yesterday is actually submitted to this court for purposes of persuasive authority because it's the only other court or the only other case wherein United States Appellate Court has dealt with the issue that we're looking at here, whether a particular item is called a component or is even on the munitions list. But again, never has it ever been considered with regard to empty firearm magazines. Is your issue that they were empty or that they were magazines? Well, really… The emptiness, I mean, if you have a gun without ammunition in it and it gets across the border and you fill it with, I mean, the emptiness just seems like it would completely undo the whole goal of these export limitations if the fact that something wasn't loaded at the time it crosses the border meant that it was permissible. And that is something, however, Your Honor, that was, I think, considered at the time that it was previously brought up. Now, I don't know if that's what made the difference. All we know is that it's been brought up with regard to the ammunition. And in the ammunition in Galvan de Vuelta, which is the case that was cited by the government, the court specifically stated that the ammo was, in fact, part of the munitions list. When it came to empty firearm magazines in Flores, I don't know if it was what made the difference, but this court specifically stated that it was unclear as to whether these empty firearm magazines were part of the munitions list. And it never went on, the panel never went on to decide or make a decision as far as whether it is or should be. It only stated that it was unclear whether they were part of the munitions list. Well, isn't the magazine what essentially puts the A in AK-47? I think AK stands for automatic Kalashnikov. And isn't the magazine what makes the weapon automatic? And I understand it can fire one round without the magazine, but doesn't the magazine make it automatic? Yes, it does, Your Honor. And in fact, as the expert testified, the magazines do, in fact, raise the lethality of the weapon. It does, in fact, make it more useful. It does, in fact, make it shoot in a faster manner and more deadly. That's what he testified to. But the point that we made and we're making here today, Your Honor, is that at the time of the export, the law clearly was that this court has stated that it was unclear whether these were part of the munitions list, empty firearm magazines. And that is a fact. And it didn't discuss whether it was a component, right? Well, this court, Your Honor, did state for purposes of—the argument from Flores was, one, that they were not part of the munitions list altogether. The court did not disagree with that position. However, the court went a step further and said, well, are they components? We're unclear as to whether they are components. So reading the language of that case, it— It doesn't really say that. It doesn't really—I'm not even sure I see the word component in the paragraph of Flores that deals with that issue. It says no plain error. It states on page 30, right where headnote number two is, it states, we note that there is no clear authority—  And so this court went on to say, well, they didn't disagree with Flores' argument that they are not on the munitions list. That's a fact. They're not named in the munitions list. However, they went a step further and said, well, are they components? And the court clearly stated, we're not clear. There's no clear authority. Now, the government cites Simmons— That just means there's no case law. I mean, it's talking about clear authority in this circuit. Right. Isn't it? I'm sorry, Your Honor. It says there's no clear authority in this circuit, meaning we haven't decided the issue prior to that opinion. Right. And if the court looks at the—well, I did the research, the government did the research at the time that Flores was decided, and up to this point, there has been no other circuit, no other federal court that's ever dealt with the issue of empty firearm magazines and whether they are part of the munitions list. Did your—do you think it was in your client's mind when he was setting up to export several hundred of these that they weren't on the munitions list? Well, Your Honor, and the case law that I submitted yesterday specifically deals with that issue because particularly in every case, there's a mens rea and there's an actus rea. As that court in the First Circuit specifically stated, it doesn't matter what the individual thinks. The government may very well prove that he had the requisite mental state. But the other element there is whether he actually broke the law, the actus reas of the crime. Now, the actus reas here is whether they are on the munitions list. Now, in that particular case that I cited— What's a component? I mean, that's the issue here, isn't it? Well, a component is specifically defined in—I'm sorry, Your Honor. It comes from componere in Latin, I assume, which is very much like componer in Spanish, and that means put with. So, magazine is put with the rifle, so why isn't that self-evident? Well, and that really was the district court's position is that it's self-evident. However, it wasn't self-evident to this court when it was brought up. If it was self-evident when Flores brought it up, this court would have said specifically, it's obvious that there are components, but we're not going to deal with that issue. They didn't say that. The court specifically— That's because quite often we decide cases where we say it doesn't matter because there's no—was this plain error? Yes. Yes, it was not plain error, so we don't have to decide because the district court could have reasonably decided either way. So, that's often something that we do. And my— It doesn't mean that it's not necessarily clear. It just means that there, as Judge Costa said, there's no governing law in the circuit. And if there is no governing law, Your Honor, on that issue, then it cannot be placed in my client's mind or knowledge. Now, every statute needs to give fair notice to a person of ordinary intelligence. The First Circuit case doesn't require case law. It talks about State Department rulings, and hasn't the State Department on this issue a number of times been asked about it and consistently said that in the State Department's view this does qualify as a component that's banned from export? No, this has never been brought up through a CJ, which is—it's a request by—usually by people with contracts with the government to export with licenses. This has never been brought up with regard to empty firearm magazines. The reason I state that in my supplemental brief is that at the time of trial, the State Department brought the— or the government brought the State Department's expert to say I'm with the State Department and I conclude that they are in fact components. This is a conclusion that was submitted to the jury post-export. Now, at the time of the export, my position, and as the court properly considered in Zenzuwu, which is the case that I submitted yesterday, the First Circuit considered that argument and stated we cannot hold it against the person who exported a particular item to know what was subsequently decided by the government was a component. So one—in that particular case, they denied the argument for vagueness, but only because that particular defendant, Wu, was a very sophisticated licensee of the government, was an export—I mean, an expert in exporting munitions and defense articles, and could not, in good faith, argue that he had no knowledge. He had knowledge, he should have had knowledge, and if he didn't, he could have asked because he had a contract with the government. In this particular case, we're dealing with a mom-and-pop shop, an individual who sells mainly boots and army surplus stuff, and sometimes sells on a contract basis on any one particular client, sells either guns, ammo, or in this case, empty firearm magazines. I would say that in that case, in this particular case, looking subjectively at the defendant, he did not have knowledge, and the statute was vague as far as whether he should have known that it was illegal to export these. Now, on top of that, there is the fact— The government witness didn't testify about the State Department's previous treatment? Because there are these commodity jurisdiction determinations on the Internet that indicate they have, in response to inquiries before, said that magazines—maybe not this exact type, but that magazines for automatic rifles are considered components. Yes, Your Honor. The expert actually just testified as to the fact that, as Your Honor pointed out, these particular components, as he called them, raise the lethality and the usefulness of the weapon. And then he went on to say that the Department of Defense, the Commerce Department, and the State Department, acting in consultation with each other, had determined that the AK-47 magazines were components and that they belonged in Category 1H. That's what his testimony was. But he never once testified to the fact that this was ever published, that this was ever made available to the public. The only thing that had been made available to the public was this Court's determination in Flores that it was unclear as to whether these empty firearm magazines were part of the munitions list. Now, this fellow, is he a gun dealer? No. He—I'm sorry, Your Honor. My client actually owns El Cañonazo, which is a store, an Army surplus store in Laredo. It basically sells mostly Red Wing boots. But somehow he gets access to these weapons, so he had to be federally licensed in some respect, did he not? No. No? He didn't have—he was not required to have a federal license to sell guns or to sell ammo or to sell, in this particular case, firearm magazines. He could sell them. That was never an issue at trial. The issue that I am making is that at the time of the trial, we made—we specifically made it an issue by our motion to dismiss these counts that they were not part of the munitions list. Now, that specifically, specifically negates the actus reus of the offense. Now, the government did prove, if we go with what the jury found, that he had the mental intent to export these magazines. But what the government did not prove, and the jury never had the opportunity to decide, was whether, in fact, these were part of the munitions list, which is the actus reus of the offense. My personal view is that this is a matter of common sense. I mean, because the munitions list defines components, accessories, and—what is it? Parts—components, parts, accessories, and attachments for firearms. Well, in— That's not common. I mean, you don't need an expert to interpret that. And that was the same argument in Zenzu, Wu, Your Honor, in the First Circuit. The government argued, well, this is something—not only did we have a person of more sophisticated knowledge than the regular, ordinary citizen owner of a mom-and-pop shop, small, not a multimillion-dollar corporation, that they should have known that it was common sense, and particularly Mr. Wu, in that case, should have known. That was the argument that the government made. The court in the First Circuit specifically stated we cannot impart that knowledge on an individual if that's not the law at the time, and it's never been made public. So my client's position from the beginning, Your Honor, has been— When you say it's never been made public, what do you mean by that? Well, because— You mean it's because it was retroactive or because it wasn't in the Code of Federal Regulations, or what? In Zenzu, it wasn't in the Code of Federal Regulations. However, after the export, but before the case was appealed, there had been a request for a determination by the State Department. And the State Department did, in fact, in that case, determine by a formal determination of the State Department that it was part of the munitions list. This hasn't happened here. However, even there, the court said that because that determination, number one, was made after the export, it cannot be held against them. Number two, there's no information anywhere on the record that that determination was ever made public. So that would have been a second strike against holding it against them. Well, now, again, I'm looking at—I mean, maybe this all came up after your trial, but the United States munitions list has a CFR, 22 CFR section 121.1. That list defines defense articles to include a firearm, age, component parts, accessories, and attachments for the articles in paragraph A, right? I mean, you say that age did not exist before the actions that occurred here? No, that section did exist. That did exist. And, in fact, in ZENZU, the section under 11C reads exactly the way that one does, the same exact language. It's section 11C. And in that case, they were dealing with face shifters, which were specifically designed to attach to a specific defense or military weaponry. The argument was the same. It says here its components, and this face shifter specifically attaches to this weapon and, therefore, makes it more useful, same exact argument. The court said, we understand, but that was not in the list. And if it wasn't in the list, it wasn't made—he can't have known that it was part of it, even if it is common sense or if the argument is that it is common sense, because it had perhaps other uses or perhaps the argument was that it had other uses. Well, in this particular case, the same exact language applies. They're components, according to the government. However, they're not listed under the components list. And the only real determination we have from the government or from the courts is that the Fifth Circuit has said it is unclear as to whether these are part or are components for purposes of the munitions list. If that does not give adequate notice to a person who is selling, that statute is vague. That statute basically applies a subsequent determination by the government to an export that was made way before the time of the determination, which was trial. And on top of that, Your Honor, we submit to the court that it should have been an issue. It should have been an issue that had to be proven beyond a reasonable doubt under Apprendi because it is the actual actus reus of the criminal act, which is whether, in fact, it violated the munitions list. All right. Thank you, sir. You have time for rebuttal. Mr. Berry. May it please the Court, opposing counsel, if I could, I'd like to Why don't you hit that Apprendi question while it's hot on everyone's mind. I'd be delighted to. That was never raised in the district court. That wasn't raised in the opening brief in this court. There is no reply brief in this court. That issue is not before the court. The problem with the First Circuit case, Wu, that a defense counsel filed as part of a 20-A-J letter, was the jury instruction. The jury was told that they could not disagree with the State Department designation that magazines were, in fact, components under 22 CFR 121.1H. The First Circuit found that that was an objectionable. That should have been submitted to the jury. Judge Marmolejo's jury instructions are, the first part of the jury instructions require them to find that Gonzales violated the law. Not specifically that these are included on the U.S. munitions list. But there was no request for a jury instruction on whether or not these are on the U.S. munitions list. And, in fact, at the pretrial conference, defense counsel specifically waived that very issue. If I may read from page 567. My preservation of my objection, Your Honor, is that basically it is not a fact issue. It's a legal issue. And that component is something that, according to the statute, would make the weapon fire. And the weapon can fire without these magazines. So, not only was there no request for a fact issue on whether or not they're on the munitions list, I would respectfully submit that that was waived before the trial began. Moreover, there was no discussion in the district court, or in the opening brief in this court, of due process or notice. The sole issue was a fact issue, whether or not empty firearms magazines for an AK-47 are included as components under 22 CFR 121.1H. Precisely as . . . well, if I could, I'd address Judge Jones' question about Flores and . . . Yes. We note that there is no clear authority, quoting from slip opinion, page 1. We note that there is no authority in this circuit on whether empty firearms magazines are components for the purpose of determining a defendant's base offense level under 2M5.2. At the conclusion of the paragraph, because there is no clear authority in this circuit, any error in including the magazines and applying the base offense level provided by 2M5.2A1 is not clear or obvious error. The issue before the court wasn't whether or not they're on the munitions list. It was strictly which of two offense levels from 2M5.2 applies, the 26 default level or the 14 base level, which is essentially defense counsel's second issue. It says that . . . Well, do you think components is defined differently in the guidelines and in the defense munitions list? Your Honor, I don't know that there's a definition in the guidelines. The question is whether it was that you get the higher base offense level, the 26 or the . . . I understand that. I'm just saying, is there any . . . Now, this is 22 CFR 120.45A, and it defines end items, components, accessories, parts, blah, blah. An end item is a system, equipment, or an assembled article ready for its intended use. Only ammunition is required to place it in an operating state. A component is an item that is useful only when used in conjunction with an end item. And that's a repetition of the definition from 121.8H, a verbatim repetition. A component is an item which is useful only when used in conjunction with an end item. Well, is there some reason why the CFR has it in there twice? Oh, it's in there several times, Your Honor. I will represent to the Court. On the page following that definition, there is a further explanatory note. This category does not cover accessories and attachments such as belts, slings, aftermarket rubber grips, and cleaning kits for firearms that do not enhance the usefulness, effectiveness, or capabilities of the firearm. Precisely as Mr. Schwingler from the State Department explained at the jury trial, the magazine, and precisely as Judge Costa rather humorously noted, the magazine puts the A in automatic. If there isn't a magazine, one would have to place one live round of ammunition in the chamber and either point the weapon down so that it fell into place or push it in with your finger, release the catch, allow the bolt carrier group to go forward, and then fire the rifle one time. The 30-round magazine, you could fire the rifle 30 times in the semi-automatic mode with 30 pulls of the trigger or 30 times with a single pull of the trigger if it was in full automatic mode. It's essentially the difference between a skateboard and a four-door car. It enhances the utility and the function of the firearm beyond description. Has the State Department directly addressed this issue before in any type of request? I believe that Mr. Schwingler said that they had consistently determined that firearm magazines are components. I do not know that they specifically said that AK-47 high-capacity magazines were components, but there's no reason to treat them any different from any other high-capacity magazine for either a rifle or a semi-automatic pistol. What about the sentencing argument where the defendant contends that these are not arms, non-fully automatic small arms? He's basically saying it should be at a 14 instead of a 26. Right, and ironically, the case that he filed is a 28-J letter. The case that Wu from the First Circuit discusses at some length, 2M5.2 and its various revisions. The original version, the default level was 26. The reduced level was 14 if certain things applied. And, in fact, Judge Lynch explains in the opinion the original version was the base offense level is 14 if you have 10 or fewer non-fully automatic firearms and there was no inclusion, no mention of ammunition. The guideline was amended by the commission and it was reduced to non-fully automatic small arms, the number of which is less than two. It's their wording, not mine. And 500 rounds of ammunition or less. Judge Marmolejo specifically found that Mr. Gonzalez was in possession of 1,500 rounds of ammunition which were transferred to two co-defendants in February after the three magazine deliveries the previous November and December. There's absolutely no attack on that finding. It was a sentencing finding. It is not clear error. It's fully supported by the record. And that 1,500 rounds of ammunition alone without the magazines would warrant a base offense level of 26. As the court said in Diaz-Gomez, which I cited in the brief, although not for this specific proposition, only in 2M5.2 means precisely that. Only. Base offense level is 26 unless one of the following applies. You have fewer than two or less firearms. You have 500 or fewer rounds of ammunition or both. The ammunition alone would have warranted a base offense level of 26. The ammunition in conjunction with any other item, particularly high-capacity magazines, certainly warranted a base offense level of 26. And in relation to Judge Smith's question as to whether or not Mr. Gonzalez was aware, the crux of your question, as I understand it, was whether or not he was aware that what he was doing was illegal. I respectfully submit that there's absolutely no question about that. Money was delivered by courier from Mexico to Mr. Gonzalez to stores in Laredo. There was no documentation, no receipts, no identification, and it was always in cash and $100 bills. One or two days later, a second courier would arrive to collect the magazines, which had been repackaged, and again, there was no discussion, no identification, no receipt, no documentation of any kind. The magazines in the three counts of the indictment that were successfully tried to a verdict of guilty were in each instance then delivered to truck drivers who attempted to smuggle the magazines across the border from Laredo into Mexico. So I would respectfully submit that there's absolutely no question that Mr. Gonzalez knew he was violating the law. The third delivery actually was a co-defendant and employee of Mr. Gonzalez who delivered 360 magazines from a storage shed, which had previously been removed from the store to the storage shed, because Mr. Gonzalez was concerned about police surveillance at the store located in downtown Laredo four blocks from the border. If there's any remaining doubt, that evaporated when Mr. Gonzalez was interviewed by the agents. He explained that he did not have a federal firearms license, but that he only dealt with U.S. citizens, that he never sold magazines from the second or north store, that he always knew his customers, and that he always provided receipts, all of which was in direct conflict to the testimony of all of the other witnesses at the trial. If I would respectfully ask that the conviction and sentence be affirmed. If the court has any question, I'd be delighted to address it. No questions, thank you. Okay, Mr. Martinez. Brief rebuttal, Your Honor. Just to address the issue, or a couple of minor issues that were brought up by the government. As far as the, as I stated, and in Zenzu, the court specifically stated that even where the evidence is sufficient to show the necessary mens rea, the government still must always meet the burden of proving the actus rea. In this particular case, the government argues that this was a legal issue. In that case, the government argued the very same thing. The court stated in defense that the government argues that the question of whether the face shifters fall within the munitions list is a legal issue not suited for the jury. The court stated, we have held that a showing that an exported item was on the munitions list is an element of 2778 violation. And in order to convict the defendant under the criminal statute, the court said the government must prove each element of the offense to a jury beyond a reasonable doubt and cited apprendi. The court went on to say, so here defendants did contest the prosecution's claim that the face shifters fell within the munitions list category. Therefore, it's different than the case that they had cited, making it an issue. So the court went on to say, juries are capable of determining whether face shifters are specifically designed for military use with the items listed in the munitions list. And whether they are exempt from the restrictions due to whatever language the statute states. Although permitting juries to decide questions like these may complicate enforcement of our nation's export control regime, the constitutional rights at issue, which is the guarantee of due process, the right to a jury trial, and the protection against ex post facto laws, the court stated, are of surpassing importance. Well, now Mr. Berry has made some important statements about the fact that defense counsel at trial, was that you? Yes. Yeah, waived this issue and said it was a legal issue, not a fact issue. Well, again, the court in Zenzu stated that this legal issue can and should be submitted to the jury. I would also submit to the court. Legal issues don't, well, there's something missing there. Well, because the court, the First Circuit, Your Honor, specifically stated that although it is, it rings as a legal issue, it is the specific actus reus of the offense, and therefore shouldn't be. Even if the First Circuit said that, you asked the district court to dismiss the indictment, which is, you don't do on a fact issue. So I mean, it sounds like you now think because of this First Circuit case, maybe you had the wrong tactic in the trial court, but we have to review it the way it was presented in the trial court. Well, my position, Your Honor, is that you cannot waive an element of an offense. The government must still prove each and every element of the offense to the jury. I cannot, by my own language, the attorney, waive the government having to prove a specific element of the offense. But, you know, like most of these kinds of cases, I gather the sole jury issue was, did defendant violate whatever the provision statute was, right? The defendant export. Did the defendant export. That was the question. And did it have any other, but the jury instruction said something about components, did it not? It didn't ask whether they were, in fact, whether the jury agreed that they were on the munitions list or were components. It only stated that whether my client had willfully violated the statute by exporting. That's what they did. So you're saying that the jury, well, then I still think that you would have had the latitude to argue to the jury, no, he didn't willfully export because components are not in the list. Why couldn't you have argued that to the jury? Well, we weren't given that opportunity because the expert testified as a matter of fact, as an authority from the State Department, that they were, in fact, part of the munitions list. It took away our ammunition when it came to that. Well, but if you were to get, assuming you were to get a retrial, then the expert could still come on and say they were part of the list. Could he not? Well, even if the court is to decide now or if the State Department was to decide now that they are, in fact, part of the munitions list, this is a determination made ex post facto. At the time of the export, my client did not have the benefit of this determination, whether it be made now or at the time of trial or any time in the future. Didn't the Flores case put your client on notice that the government thought these magazines were on the munitions list? The people went to prison in Flores. Well, but the government argued that, and they did go to prison because of it. However, the court specifically stated we're not going to deal with whether they are, in fact, components because this issue wasn't brought up at the time of trial. But it showed that whatever the court was going to do, it showed what the government's view was, that they're prosecuting people for exporting these magazines to Mexico. And your issue is an issue of what the government's view was of the munitions list. Well, the issue is not whether the government thought so. The government may very well think this or that, but the statute doesn't state it, and the court didn't. I thought you were making a notice issue that the notice has to be provided before trial. Well, the only notice we had is that the authority, which is the Fifth Circuit Court of Appeals, had stated that there was no clear authority with regard to whether they are on the munitions list. I'll just ask you one other question, and that is if your client had no suspicion that what he was doing was wrong, why accept money bundled in $100 bills? Why package it without ID and so on? Well, that . . . That's a very surreptitious type of transaction. And that testimony was, in fact, brought up at trial, and as the First Circuit stated, even if the person had the requisite mens rea, which in this case it's arguable whether he did . . . No, but doesn't that lend some credibility to the way the government would interpret this? That a reasonable man who you say is not an expert on any of this and so on, nevertheless it realizes he's doing something that's probably against the law. Well, his testimony, Your Honor, at the time of trial was specifically . . . I'm not a cop, is what he said. He said, I ask for ID, and if they're United States citizens, I sell it to them. What they do with it afterward, I have nothing to do with it. That was his testimony. Now, but again, assuming that that was not the case and that he did have the requisite mental state, the First Circuit specifically stated that that's not it. You have to show that it is, in fact, the guilty act occurred. It's analogous to thinking that your rifle is under a certain length and selling it as such with a guilty mind. And when it gets caught, it isn't. It's actually not below that specific length. The court said, well, you have the requisite mental state, but the actus reus was not completed. And that's the same issue here. Okay. Thank you.